**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Revive You Media LLC, | No. CV-18-00541-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Esquire Bank, | |
| Defendant. | |

Plaintiff Revive You Media LLC filed a complaint in Maricopa County Superior Court against Defendant Esquire Bank, alleging various contract-related claims. Doc. 1-1 at 4-12.[1] Defendant removed this action to federal court (Doc. 1), and Defendant has filed a motion to dismiss the complaint under Rule 12(b)(6) and (7) (Doc. 8). The motion is fully briefed and oral argument will not aid the Court's decision. Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For the reasons that follow, the Court will dismiss Counts Two and Three.

**I. Background.**

For purposes of this motion, Plaintiff's factual allegations are accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On January 28, 2016, Plaintiff, doing business as LuminateSkin, SkinPerfect, TryLumaEssence, SkinEssentials, TryRejuvaEssence, UltraCleanse, and Pure Slim Cleanse, executed seven merchant

---

[1] Citations are to page numbers attached to the top of pages by the Court's ECF system, not to original numbers at the bottom of pages.

agreements with Defendant. Doc. 1-1 at 13-47. American Payment Solutions ("APS") was also a party to each agreement. *Id.* These agreements require Defendant and APS to provide certain payment processing services to Plaintiff. *Id.*

The agreements permit Defendant to create reserve accounts at Defendant's bank "for all future indebtedness of [Plaintiff] to [Defendant] or [APS] that may arise out of or relate to the obligations of [Plaintiff] under this Agreement, including, but not limited to, Chargebacks and fees, in such amount as Defendant from time to time may determine in its sole discretion." *E.g.*, *id.* at 16, ¶ 6. Defendant established reserve accounts pursuant to each of the seven agreements. *Id.* at 6.

The agreements also permit Defendant to terminate each agreement "upon at least 30 days' prior written notice to the other parties." *E.g.*, *id.* at 17, ¶ 27. But Defendant could terminate an agreement "immediately upon written notice" to Plaintiff upon the occurrence of 11 listed events. *Id.* Defendant terminated each of the seven agreements on or before April 7, 2017, without providing proper notice to Plaintiff of the termination. *Id.* at 5, ¶¶ 10-11.

Each of the agreements explains the disposition of the reserve accounts after termination:

> The Reserve Account will be maintained for a minimum of six months after the date on which this Agreement terminates or until such time as [Defendant] determines that the release of the funds to [Plaintiff] is prudent, in the best interest of [Defendant], and commercially reasonable, and that [Plaintiff's] account with [Defendant] is fully resolved. Upon expiration of this six-month period, any balance remaining in the Reserve Account will be paid to [Plaintiff]. [Defendant] will inform [Plaintiff] in writing of any charges debited to the Reserve Account during this six-month period.

*E.g.*, *id.* at 16, ¶ 6.

After the terminations, Defendant did not inform Plaintiff in writing of any debits to the seven reserve accounts. *Id.* at 6, ¶¶ 13, 15. Yet six months after the terminations, Defendant still retained the funds in all seven accounts, which totaled approximately $182,897.15 as of October 2017. *Id.* at 6, ¶¶ 12, 14, 16-17.

Plaintiff filed a complaint in January 2018 seeking damages arising from breach of contract (Count One), breach of the covenant of good faith and fair dealing (Count Two), unjust enrichment (Count Four), and conversion (Count Five). *Id.* at 7-12. Plaintiff also seeks a declaratory judgment (Count Three). *Id.* at 9-10.[2]

**II. Failure to Join Necessary Party.**

Defendant contends that the Court must dismiss the complaint because Plaintiff failed to join a necessary party. Doc. 8 at 7-8.

**A. Legal Standard.**

Rule 12(b)(7) allows dismissal of an action for failure to join a necessary and indispensable party under Rule 19. Rule 19 provides:

> a three-step process for determining whether the court should dismiss an action for failure to join a purportedly indispensable party. First, the court must determine whether the absent party is "necessary[.]" . . . If the absent party is "necessary," the court must determine whether joinder is "feasible." Finally, if joinder is not "feasible," the court must decide whether the absent party is "indispensable," *i.e.*, whether in "equity and good conscience" the action can continue without the party.

*United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999) (citations omitted); *see also Salt River Project Agric. Improvement and Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012).

**B. APS.**

An entity is a required party under Rule 19 if it is subject to service of process and its joinder will not deprive the court of subject matter jurisdiction, and at least one of the following conditions must be met:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[2] Plaintiff's complaint does not attach paragraphs 1 through 14 of the SkinEssentials merchant agreement (*see* Doc. 1-1 at 44-47), but Defendant does not contend that this agreement was different from the other six (*see* Doc. 8).

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Defendant contends that APS is a required party under Rule 19(a)(1)(A) because Section 27 of the agreements identifies APS as a party that could terminate the agreements or take action that would warrant a termination. Doc. 8 at 8. For this reason, Defendant argues, the Court "cannot accord complete relief without the involvement of APS." *Id.* But Defendant has not explained how Section 27 renders APS necessary in light of Plaintiff's allegations. The complaint asserts that Defendant, not APS, breached the agreements. Taking those allegations as true, the Court cannot find at this stage that APS's presence is necessary to "accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A).

Defendant next argues that APS is a required party under Rule 19(a)(1)(B) because the agreements give APS a legal interest in the reserve accounts. Doc. 8 at 8. The agreements permit the establishment of reserve accounts "for all future indebtedness of [Plaintiff] to [Defendant] or [APS] that may arise out of or relate to the obligations of [Plaintiff] under this Agreement[.]" *E.g.*, Doc. 1-1 at 16, ¶ 6. For this reason, Defendant argues, disposing of this action without APS might (1) impede APS's claim to some of the reserve account funds or (2) expose Defendant to inconsistent obligations insofar as it might be required to pay the same money to both Plaintiff and APS. *See* Doc. 8 at 8.

The Court cannot conclude at this stage that APS "claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). Granted, the agreements contemplate the possibility that APS might have an interest in some of the reserve account funds, but the agreements permit Defendant to transmit such debts to APS in the six months following termination, and only then with written notice to Plaintiff. Six months have passed and Plaintiff asserts that Defendant never provided written notice of deductions to

satisfy Plaintiff's debts to APS. Because the complaint's allegations do not show that APS has an interest in the reserve account funds, the Court declines to dismiss the complaint under Rule 12(b)(7).

**III.      Failure to State a Claim.**

Defendant contends that each of Plaintiff's five counts fails to state a plausible claim. Doc. 8 at 8-16.

**A.      Legal Standard.**

A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**B.      Choice-of-Law.**

The merchant agreements provide that their terms "shall be governed and construed in accordance with the laws of the State of New York, without regard to internal principles of conflict of laws, and federal law." *E.g.*, Doc. 1-1 at 18, ¶ 39. "When parties include an express choice-of-law provision, Arizona courts apply the analysis set forth in the Restatement (Second) of Conflict of Laws § 187 to determine whether that choice is 'valid and effective' and to determine the appropriate balance between the parties' circumstances and states' interests." *Sherman v. PremierGarage Sys., LLC*, No. CV-10-0269-PHX-MHM, 2010 WL 3023320, at *5 (D. Ariz.

July 30, 2010) (citing *Swanson v. The Image Bank, Inc.*, 77 P.3d 439, 441-42 (Ariz. 2003)). The last phrase of the parties' choice-of-law provision in this case suggests that New York law should be applied without regard to conflict of law principles like those in § 187, but Arizona courts do not honor such provisions. Parties cannot contractually bypass the § 187 analysis. *Swanson*, 77 P.3d at 441.

The parties do not identify an actual conflict between Arizona and New York law or apply § 187 to the facts of this case. Docs. 8, 16. Rather than engage in this analysis, the parties cite New York and Arizona law simultaneously to support their arguments. *Id.* Defendant explains that it "does not engage in a lengthy conflict of laws analysis for purposes of its Motion, where the substantive laws of New York and Arizona are substantially in agreement with respect to Plaintiff's claims." Doc. 17 at 2. Because Defendant bears the burden on this motion, the Court will decline to dismiss any claim that would survive under either New York or Arizona law.

**C. Count One.**

Count One alleges a breach of contract based on Defendant's (1) termination of the agreements without proper notice and (2) retention of reserve account funds. Doc. 1-1 at 7-8. To prevail on this claim under both New York and Arizona law, Plaintiff must show, among other things, a breach of contract that caused damages. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013).

**1. Conduct Constituting Breach.**

Defendant contends that its conduct does not constitute a breach of the agreements. Doc. 8 at 9. With respect to Plaintiff's allegation that Defendant terminated the agreements with improper notice, Defendant argues that Plaintiff failed to allege that its decision to terminate the agreements was improper. *Id.* Such an allegation is unnecessary. No matter the reason for termination, the agreements require Defendant to provide written notice to Plaintiff. *E.g.*, Doc. 1-1 at 17, ¶ 27. Plaintiff alleges that

Defendant's notice was deficient. *Id.* at 5, ¶¶ 10-11. This states a plausible breach of the agreements.

With respect to Plaintiff's allegation that Defendant wrongfully retained the reserve account funds, Defendant argues that the agreements permit it to retain them longer than six months. Doc. 8 at 9. Defendant emphasizes that it could retain the funds for a minimum of six months "or until such time as [Defendant] determines that the release of the funds to [Plaintiff] is prudent, in the best interest of [Defendant], and commercially reasonable, and that [Plaintiff's] account with [Defendant] is fully resolved." *E.g.*, Doc. 1-1 at 16, ¶ 6; *see also* Doc. 8 at 9. Its decision to keep the reserve accounts longer than six months, Defendant argues, does not establish a breach of contract. Doc. 8 at 9.

The Court does not agree. The agreements attempt to give Defendant discretion to withhold the reserve account funds for longer than six months, but they simultaneously state:

> Upon expiration of this six-month period, any balance remaining in the Reserve Account will be paid to [Plaintiff]. [Defendant] will inform [Plaintiff] in writing of any charges debited to the Reserve Account during this six-month period.

*E.g.*, Doc. 1-1 at 16, ¶ 6. This inconsistency creates an ambiguity which cannot be resolved at the motion to dismiss stage. In New York and Arizona, ambiguous contracts often are construed against the drafter. *See Lai Ling Cheng v. Modansky Leasing Co., Inc.*, 539 N.E.2d 570, 573 (N.Y. 1989) (ambiguous terms "must be strictly construed against the drafter"); *Abrams v. Horizon Corp.*, 669 P.2d 51, 57 (Ariz. 1983) (there is a "preference to construe ambiguities against the drafter"). Defendant appears to have drafted the agreements. *See* Doc. 1-1 at 14-47 (standard merchant-bankcard applications with Defendant's header); Doc. 16 at 9 (Plaintiff asserts that Defendant drafted the

agreements); Doc. 17 at 3 (Defendant does not dispute that it drafted the agreements). In addition, parol evidence might come into play in resolving ambiguous agreements.[3]

Despite the language that Defendant emphasizes, the agreements state that "[u]pon expiration of this six-month period, any balance remaining in the Reserve Account will be paid to [Plaintiff]." *E.g.*, Doc. 1-1 at 16, ¶ 6. Plaintiff asserts that this provision requires Defendant to return the reserve accounts to Plaintiff within six months. *Id.* at 6, ¶ 16. Plaintiff alleges that Defendant failed to do so. *Id.* at 5-6, ¶¶ 11-17. At this stage in the litigation, the Court finds that the complaint states a plausible interpretation of the agreements and breach of contract.

### 2. Damages.

Defendant contends that Section 23 of the agreements absolves Defendant from liability for any damages. Doc. 8 at 9. Section 23(d) states that Defendant is not liable to Plaintiff for any

> [i]nterruption or termination of any Services caused by any reason except for failure of [APS] to repair or replace Equipment at [Plaintiff's] expense (in which case, any resulting liability shall be for the sole account of [APS]). At no time will [APS]'s liability exceed the amount of fees collected or reasonably expected to be collected from [Plaintiff] for this delay period.

*E.g.*, Doc. 1-1 at 17, ¶ 23(d). Plaintiff counters that the damages it seeks are not the result of the interruption or termination of services, but rather the result of Defendant's termination of the agreements without proper notice and its retention of the reserve account funds. *See* Doc. 16 at 10. Again, the Court cannot resolve this issue at the motion to dismiss stage. The Court cannot determine on this bare record what is meant by "[i]nterruption or termination of any Services," and whether that phrase is limited to

---

[3] The Arizona Supreme Court has adopted a more liberal interpretation of the parol evidence rule than many courts. "[T]he judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible' to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993).

specific loss-of-service scenarios or whether it is broad enough to encompass termination of the entire agreement.

Defendant also contends that another provision of Section 23 requires dismissal:

NEITHER [DEFENDANT] NOR [APS] SHALL BE LIABLE FOR ANY LOST PROFITS, PUNITIVE, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES TO [PLAINTIFF] OR TO ANY THIRD PARTY IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY OF THE SERVICES TO BE PERFORMED BY [DEFENDANT] OR [APS] PURSUANT TO THIS AGREEMENT.

*E.g.*, Doc. 1-1 at 17, ¶ 23; *see also* Doc. 8 at 9. But this section is found within Section 23 and, as noted above, the Court cannot determine on this record whether it is limited to specific scenarios in that section. The Court accordingly finds that it cannot rely on Section 23 to dismiss Count One.

### D. Count Two.

Count Two alleges a breach of the implied covenant of good faith and fair dealing. Doc. 1-1 at 8-9. Defendant contends that this claim must be dismissed because it is duplicative of the breach of contract count. Doc. 8 at 10. Specifically, Defendant argues that the violation of an express term of a contract, without more, is not a breach of the implied covenant. *Id.* Plaintiff counters that Rule 8 permits it to plead in the alternative. Doc. 16 at 11-12.

Rule 8 may permit inconsistent pleadings (Fed. R. Civ. P. 8(d)(3)), but a breach of the implied covenant cannot depend on the same exact facts as an alleged breach of an express contractual term, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (under New York law, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant"); *Aspect Sys., Inc. v. Lam Research Corp.*, No. CV 06-1620-PHX-NVW, 2006 WL 2683642, at *3 (D. Ariz. Sept. 16, 2006) (dismissing implied covenant claim "[b]ecause Plaintiff has not explained how Defendants have breached the implied covenant other than through the breach of an express contractual

term") (citing *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002)). Plaintiff's additional case citations, without explanation, do not require a different conclusion. Doc. 16 at 13 (citing *House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 170 (S.D.N.Y. 2010) (decision on duplicative implied covenant claim is inconsistent with the Second Circuit decision in *Cruz*); *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28-31 (Ariz. 2002) (decision is silent on whether the mere violation of an express contractual term can constitute a breach of the implied covenant)).

Count One alleges two breaches of express contractual terms: (1) termination without proper notice and (2) wrongful retention of reserve account funds. Doc. 1-1 at 7, ¶¶ 22, 24. Count Two leaves no doubt as to the substance of its allegations: it relies on the exact same conduct to assert a breach of the implied covenant of good faith and fair dealing. *Id.* at 8, ¶¶ 36-37. Plaintiff's response does not identify any other conduct to substantiate this claim. *See* Doc. 16 at 13. The Court accordingly will dismiss Count Two.[4]

### E. Count Three.

Count Three seeks a declaratory judgment pursuant to A.R.S. § 12-1831 that Defendant "is obligated to pay, and is directed to pay, the funds in the reserve accounts" to Plaintiff. Doc. 8 at 9, ¶¶ 49-50. Because this action has been removed to federal court, however, Plaintiff's state-law claim must be converted to a claim brought under the Federal Declaratory Judgment Act ("Act"), 28 U.S.C. § 2201. *See Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir. 1996) (when a state-law declaratory judgment claim is removed to federal court under diversity of citizenship jurisdiction, "the claim remain[s] one for declaratory relief, but the question whether to exercise federal jurisdiction to resolve the controversy bec[omes] a procedural question of federal law."), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133

---

[4] Defendant argues that Count Two suffers from the same deficiencies it asserts against Count One. Doc. 8 at 10-11. The Court rejects these arguments for the same reasons. *See supra* Part III(C).

F.3d 1220, 1224-26 (9th Cir. 1998) (en banc) (overruling *Golden Eagle*'s implication that district courts must sua sponte consider whether jurisdiction should be declined over a claim under the Act). This is so because under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law, and the Act is a procedural statute. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014) ("We have long considered the operation of the Declaratory Judgment Act to be only procedural, leaving substantive rights unchanged." (internal quotation marks omitted)).

Defendant contends that the declaratory judgment claim must be dismissed because alternative remedies are available and it is duplicative of the breach of contract claim. Doc. 8 at 11-12. Plaintiff counters that this claim seeks different relief: a declaration that Plaintiff "is the owner of, is entitled to take possession, custody and control of, and is entitled to the use of, the funds in the reserve accounts applicable to the Merchant Agreements." Doc. 16 at 13. This is simply an alternative remedy, Plaintiff argues, in the event that Defendant prevails on the contract-law claims. *Id.* at 13-14.

Under the Act, the Court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "Federal courts do not have a duty to grant declaratory judgment," *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008), and have "discretion to determine whether maintaining jurisdiction over the declaratory action would be appropriate," *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). The Ninth Circuit has explained:

> In making such a determination, a district court is to consider a variety of factors, including whether retaining jurisdiction would: (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties.

*Id.* at 1107-08.

Considering the first factor, the Court can discern no useful purpose for Plaintiff's declaratory judgment claim. Courts have interpreted this factor to preclude declaratory judgment claims that simply repeat claims or defenses already in the action. *Jajo v. Auto-Owners Ins. Co.*, No. CV-13-00069-PHX-SRB, 2013 WL 12195628, at *2 (D. Ariz. Oct. 2, 2013); *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3-4 (N.D. Cal. 2008) (compiling cases). But a district court should be careful to dismiss a declaratory judgment claim "only when it is clear that there is a complete identity of factual and legal issues" between the declaratory judgment claim and the other counts. *Stickrath*, 2008 WL 2050990, at *4.

Count Three arises in contract and seeks a declaration regarding the rightful disposition of the reserve account funds. Doc. 1-1 at 9, ¶¶ 49-51. The breach of contract claim seeks resolution of the same issue: whether Defendant retained the reserve account funds in violation of the merchant agreements. *Id.* at 7, ¶ 24-26. Resolving this factual and legal dispute for the breach of contract claim will identify the party entitled to the reserve account funds under the merchant agreements. That is all Plaintiff seeks in Count Three. This factor weighs heavily in favor of dismissal.

The parties make cursory references to some remaining factors (*see* Doc. 8 at 11-12; Doc. 16 at 13-14), and Plaintiff emphasizes the lack of parallel state proceedings, forum shopping, or a needless determination of state-law issues (Doc. 16 at 14). But the Court finds that these factors are insufficient to overcome the absence of a useful purpose for Count Three. And the two federal cases Plaintiff cites, without explanation, do not counsel against dismissal. Doc. 16 at 13-14. They either simply recite the same factors or fail to address them. The Court accordingly will dismiss Count Three.

**F.   Count Four.**

Count Four presents a claim for unjust enrichment, alleging that Defendant wrongfully retained the reserve account funds. Doc. 1-1 at 10. Defendant contends that a

claim for unjust enrichment is unavailable where the dispute arises out of contract. Doc. 8 at 12-14. Plaintiff counters that the "mere existence of a contract between the parties does not preclude equitable relief." Doc. 16 at 14.

New York and Arizona preclude recovery on an unjust enrichment claim where a valid and enforceable contract governs the subject matter of the lawsuit. *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 408 (9th Cir. 1992) (Under Arizona law, "Vintage cannot recover on its claims of unjust enrichment and breach of implied contract, however, because Vintage's relationship with Sutter Home was governed by a valid express contract.") (citing *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976)); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682 (S.D.N.Y. 2015) (under New York law, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." (quoting *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987)); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (same). But dismissal for this reason is only appropriate where the validity and enforceability of the contract are not in issue. *CCR Int'l, Inc. v. Elias Grp., LLC*, 15 Civ. 6563 (RWS), 2016 WL 206475, at *5 (S.D.N.Y. Jan. 15, 2016) ("where a contract exists, it will control, but in the event a party disputes the validity of the contract, a plaintiff may seek (though not recover) remedies sounding in both breach and quasi contract").

The Court cannot determine at this stage that the merchant agreements are valid and enforceable, and Plaintiff asserts the unjust enrichment claim "[i]n the event the merchant agreements are unenforceable." Doc. 1-1 at 10, ¶ 58. Although Plaintiff cannot recover twice for the same harm, it may maintain an alternative claim for unjust enrichment. *See Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000) (plaintiff "is entitled to pursue that alternative theory although she will, of course, be barred from

collecting a double recovery should she prevail on the [breach of contract claim] at trial"). The Court will not dismiss Count Four.[5]

**G.  Count Five.**

Count Five asserts a claim of conversion, alleging that Defendant wrongfully retained control over the reserve account funds. Doc. 1-1 at 10-12. Defendant contends that the economic loss rule prohibits this claim because it asserts damages identical to those caused by the alleged breach of contract. Doc. 8 at 14-15. Plaintiff counters that it can plead in the alternative (Doc. 16 at 11-12), and further argues that the application of the economic loss rule to this claim would violate the anti-abrogation clause of the Arizona Constitution (*id.* at 16-17).

New York law is clear. A conversion claim cannot rely on the same facts and allege the same damages as a breach of contract claim. *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013) (under the New York economic loss doctrine, "[a] conversion claim must be dismissed when it does not stem from a wrong independent of the alleged breach of contract."); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 164 (E.D.N.Y. 2012) (under New York law, "a conversion claim may only proceed if there are allegations of violations and damages distinct from those predicated on a breach of contract") (citing *Priolo Commc'ns, Inc. MCI Telecomms. Corp.*, 669 N.Y.S.2d 376, 377 (N.Y. 1998)).

Arizona's economic loss doctrine is less clear. It is "a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664, 667 (Ariz. 2010). Economic loss "refers to pecuniary or commercial damage[.]" *Id.* As the Arizona Supreme Court emphasized, "[t]he principal function of the economic loss doctrine, in our view, is to encourage private ordering of economic relationships and to uphold the expectations of

---

[5] Defendant argues that Count Four suffers from the same deficiencies it asserts against Count One. Doc. 8 at 14. The Court rejects these arguments for the same reasons. *See supra* Part III(C).

- 14 -

the parties by limiting a plaintiff to contractual remedies for loss of the benefit of the bargain." *Id.* at 671.

The Arizona Supreme Court has adopted the doctrine for purposes of construction defect and products liability cases. *Id.* at 669, 673. But *Flagstaff* did not limit the application of the doctrine to those cases. Rather, the Arizona Supreme Court explained that application of the doctrine to various tort claims requires a context-specific analysis that must take into account the policies behind contract and tort law. *Id.* at 669. While tort law seeks to promote safety and spread the costs of accidents, contract law "seeks to preserve freedom of contract and to promote the free flow of commerce." *Id.* at 667. Thus, if "common law contract remedies provide an adequate remedy because they allow recovery of the costs of remedying the defects . . . and other damages reasonably foreseeable to the parties upon entering the contract[,]" there is no strong policy reason to also provide a tort remedy. *Id.* at 669.

This Court held that the economic loss doctrine applied to bar tort claims alleging conversion and fraud in the performance of a contract for credit card payment processing services. *TSYS Acquiring Sols., LLC. v. Elec. Payment Sys., LLC*, No. CV10-1060 PHX DGC, 2010 WL 3882518, at *3-4 (D. Ariz. Sept. 29, 2010). In reaching this conclusion, the Court noted that the harms alleged in these claims arose directly from the "failure to provide the benefit of the parties' bargain[.]" *Id.* at *4 ("Because the harm alleged by the conversion counterclaim is the failure to receive the property or interest promised by the parties' contract, and not some separate harm, the counterclaim is barred by the economic loss rule."). Like the contract at issue in *TSYS*, the merchant agreements in this case are contracts for payment processing services.

The Court cannot conclude at this stage that the Arizona economic loss doctrine requires dismissal of the conversion claim. As noted above, the bare record is insufficient for the Court to determine that a valid and enforceable contract governs the

disposition of the reserve accounts. Rule 8 permits Plaintiff to assert an alternative tort claim in the event the contracts are invalid. The Court will not dismiss Count Five.[6]

### H. Attorneys' Fees.

Defendant asks the Court to strike Plaintiff's requests for attorneys' fees under A.R.S. §§ 12-341 and 12-341.01. Doc. 8 at 15-16. The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Johnson v. Cal. Med. Facility Health Servs.*, No. 2:14-cv-0580 KJN P, 2015 WL 4508734, at *6 (E.D. Cal. July 24, 2015).

Defendant contends that the Court must strike Plaintiff's requests because New York, not Arizona, law governs this action. Doc. 8 at 15-16. But Defendant has not established that New York law governs the merchant agreements. *See supra* Part III(B). For that reason, the Court declines to strike Plaintiff's requests for attorneys' fees.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 8) is **granted in part** and **denied in part** as explained above. Counts Two and Three are **dismissed without prejudice**. Plaintiff may file an amended complaint by **May 24, 2018**.

Dated this 10th day of May, 2018.

_____
David G. Campbell
United States District Judge

---

[6] Defendant also contends that Sections 6 and 23 of the agreements prohibit this claim. Doc. 8 at 15. For reasons stated above, the Court does not agree. *See supra* Part III(C).